UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

NASH PRINTING, INC., d/b/a                                Case No.: 10-71391-ast
SIR SPEEDY,                                               Chapter 11

                                      Debtor.
-------------------------------------------------------X

## DECISION AND ORDER DETERMINING DEBTOR'S TAX LIABILITY
## PURSUANT TO 11 U.S.C. § 505(a)

Before the Court is a motion [dkt item 96] filed by the debtor, Nash Printing, Inc., d/b/a Sir Speedy (the "Debtor"), pursuant 11 U.S.C. § 505(a), seeking a determination of Debtor's liability to New York State for a priority tax claim [Claim Number 11]. New York State filed a response to the Motion on July 21, 2011 [dkt item 97], and Debtor filed a reply on October 21, 2011 [dkt item 104]. For the reasons stated herein, the Court has determined that Debtor is liable to New York State for a priority tax claim.

## Background and Procedural History

Debtor filed a petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 5, 2010. [dkt item 1] Schedule E of Debtor's schedules filed with the petition includes a disputed priority claim for "New York Sales Tax" relating to "Purchase of business . . . (sales tax owed from previous owner)" in the amount of $27,958.19.

On March 18, 2010, New York State filed proof of claim number 3 for $28,248.58, of which $27,971.04 represents a priority claim, and $277.54 represents a secured sales tax liability ("Claim Number 3"). That proof of claim was amended on April 21, 2010 by the filing of Claim Number 11 for $28,171.04, which included the original $27,971.04 as a priority claim, and an additional $200.00 in tax liability assessed postpetition ("Claim Number 11").

On February 10, 2011, Debtor filed an omnibus motion[1] objecting to several claims, including Claims Number 3 and 11 ("Claims Objection"). [dkt item 81]  The Claims Objection sought, *inter alia*, to expunge Claim Number 3 because it was superceded by the filing of Claim Number 11, and to expunge Claim Number 11 because it represents taxes that "are not claims against the Debtor, but, instead, are claims for unpaid sales tax owed to New York State by a different entity, the assets of which were purchased by Debtor's principal under an Asset Purchase Agreement unrelated to this Debtor or this Chapter 11 case." That entity is identified as 284 Sunrise Highway Printing Corp. ("284 Sunrise"). Debtor, not its principal, acquired the assets of 284 Sunrise in a bulk sale that was completed prepetition. Additionally, the Claims Objection notes that Debtor paid the $200.00 postpetition tax obligation claimed in Claim Number 11.

New York State, through its Department of Taxation and Finance ("New York State"), filed a response to Debtor's Claims Objection on March 14, 2011 ("Response"). [dkt item 84] New York State consented to expunging Claim Number 3 as it had been superceded by Claim Number 11. With respect to Claim Number 11, New York State argues that, pursuant to New York State Tax Law § 1141(c), Debtor was the purchaser of assets sold in bulk by 284 Sunrise and, therefore, Debtor was required to give notice to the tax commission of the intended purchase at least ten (10) days prior to the sale closing. According to New York State, § 1141(c) "is designed to prevent an entity saddled with liabilities from being sold without the tax commission's knowledge such that the seller keeps all the purchase money without remitting the taxes and the purchaser denies any obligation."[2]

---

[1] This omnibus Claims Objection violated Federal Rule of Bankruptcy Procedure 3007(d) and (e).

[2] New York State also notes that Debtor requested a conciliation conference to address the tax liability. That conference was held prepetition on February 4, 2010, the same date that New York State filed a tax warrant against Debtor in the Nassau County Clerk's Office for the unpaid tax debt. The conferee sustained the tax debt in a ruling dated March 26, 2010, after the petition date. Because the conciliation conference ruling was rendered after the petition date,

Order - 2

New York State also acknowledges that Debtor paid the $200.00 post petition tax obligation and the $277.54 secured claim; thus, New York State asserts a priority claim for the unpaid balance of $27,971.04.

On March 21, 2011, Debtor filed a reply affidavit to New York State's Response ("Reply") [dkt item 86], asserting that "the Debtor does not have the financial wherewithal to obtain confirmation of its Amended Plan of Reorganization if it is saddled with this tax claim . . . ." However, Debtors counsel stated at the confirmation hearing two days later, on March 23, 2011, that paragraph 3.03 of the Debtor's proposed plan provides for payment of New York State's claim pursuant to Bankruptcy Code § 1129(a)(9), and that Debtor's plan was feasible even if Debtor had to pay New York State's claim.  In addition, Debtor's president, Hussain Baqueri, testified that Debtor's plan  provides for payment of tax claims and that the plan was feasible. [dkt item 87, at ¶ 41, 44]  This Court confirmed Debtor's chapter 11 small business plan of reorganization by Order entered on April 4, 2011. [dkt item 91]

On May 26, 2011, the Court issued an Order denying the Claims Objection in part with respect to Claim Number 11, without prejudice to Debtor filing a motion under Bankruptcy Code § 505 to determine Debtor's tax liability to New York State ("Section 505 Motion").

On June 23, 2011, Debtor filed the Section 505 Motion [dkt item 96], asking this Court to make a determination as to Debtor's tax liability to New York State.  Pursuant to Bankruptcy Code

---

it does not fall within the exception in § 505(a)(2)(A) to this Court's authority to determine Debtor's tax liability under § 505. Therefore, this Court may determine Debtor's tax liability to New York State under § 505(a). 11 U.S.C. § 505(a)(2)(A); *see also In re Am. Motor Club, Inc.*, 139 B.R. 578 (Bankr. E.D.N.Y. 1992).

Order - 3

§ 505, with certain exceptions not relevant here,[3] the Court may:

> determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a). In its Section 505 Motion, Debtor reiterates its position that 284 Sunrise and its former president, Stephen J. Lark ("Lark"), are liable to New York State for the unremitted sales tax, not Debtor. The Section 505 Motion argues that Debtor's confirmed chapter 11 plan would be jeopardized by the allowance of New York State's claim, despite Debtor's statements to the contrary at the March 23, 2011 hearing. Debtor also argues that New York State would not suffer harm if its claim were disallowed, as it obtained a prepetition tax warrant against 284 Sunrise for the unpaid amount, with interest at 14.5% per annum. In addition, Debtor notes that it now employs 284 Sunrise's former president, Lark, as a sales person and that, as Lark's employer, Debtor has been garnishing Lark's salary at $100.00 per week and remitting those amounts to New York State.

New York State filed a response to the Section 505 Motion on July 21, 2011 ("§ 505 Response") [dkt item 97], which does not object to this Court making a determination under § 505 of any liability owed by Debtor to New York State. The § 505 Response reiterates New York State's position that Debtor failed to give the required ten-day notice of its bulk purchase pursuant to New York State Tax Law § 1141(c), and that Debtor's assertion that it did not know about the sales tax liability is unavailing under § 1141(c). Therefore, according to New York State, Debtor is liable under New York state law for the unremitted sales tax reflected in Claim Number 11. New York

---

[3] One such exception to this Court's authority to determine Debtor's tax liability pursuant to § 505 is a tax, fine or penalty adjudicated prior to the commencement of the case. 11 U.S.C. § 505(a)(2)(A). As noted below, even if the Court were to give weight to the determination of the conciliation conference, that determination was made after the filing of the petition.

State also notes that its filed proof of claim is prima facie evidence of the validity and amount and that claim, and that Debtor, as the party objecting to that proof of claim, bears the burden of proof under Federal Rule of Bankruptcy Procedure 3007. Debtor has not disputed that it bears the burden of proof to overcome the presumption that Claim Number 11 is valid.

Debtor filed a reply on October 21, 2011 [dkt item 104], asserting that its acquisition of 284 Sunrise "was strictly an asset purchase, and no liabilities were purchased." Debtor also asserts that the February 2010 conciliation conference was non-binding and that its time to appeal the conferee's judgment of March 26, 2010, has not yet run.[4] Additionally, Debtor notes that as of October 12, 2011, Debtor had withheld $3,400 in total from Lark's pay checks and had remitted that amount to New York State in partial satisfaction of the tax debt.

A hearing on the Section 505 Motion was held before the Court on October 26, 2011 (the "Hearing"). At the Hearing, Debtor stated that it had given the New York State tax commission notice of the bulk sale, but that said notice had been given on the date of the sale, not ten days prior as required by § 1141(c). New York State pointed out that Debtor does not actually dispute liability under § 1141(c), and asserts that § 1141(c) is designed to prevent the very situation that occurred here. New York State agreed at the Hearing to a downward modification of its claim based on payments it has received.

The Court noted at the Hearing that the parties had been given the opportunity to litigate this matter either in state court or in bankruptcy court, and by filing the instant Section 505 Motion, Debtor elected to proceed before this Court, and that New York State did not oppose this Court's

---

[4] The Court notes that Debtor has not sought stay relief or otherwise sought to proceed with an appeal of the conferee's ruling of March 26, 2010.

Order - 5

adjudicating this dispute. At the conclusion of the hearing, the Court took this matter under submission.

## **Discussion**

As noted above, § 505(a) of the Bankruptcy Court authorizes, but does not direct, this Court to determine the amount or legality of any tax, any fine or penalty relating to a tax owed by the Debtor to New York State. In making a determination under § 505(a), the Court must consider several factors: any fine or penalty relating to a tax, or any addition to tax; whether or not the tax was previously assessed; whether it has been paid or not; and whether the tax was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

In this case, the amount sought by New York State appears to consist of unpaid sales tax accrued and owing to New York State prepetition; no fine, penalty or addition to the tax appears to be reflected in New York State's Claim Number 11. The tax liability at issue is for sales taxes for the prepetition period from December 1, 2004, through May 31, 2006 which 284 Sunrise did not remit. The tax appears to have been assessed prepetition, resulting in Debtor seeking the conciliation conference in February 2010. The parties disagree as to whether the claim has already been adjudicated in the conciliation conference and whether that decision is binding; however, because the tax conferee issued his determination postpetition, it is of no effect.

The parties agree that the priority portion of the claim of $27,971.04, less at least $3,400 that Debtor garnished from Lark's pay check and remitted to New York State, remains unpaid and due to New York State. Debtor does not dispute that it failed to comply with New York State Tax Law § 1141(c) and that, as a result, under New York law it is liable to New York State for the unremitted balance of Claim Number 11. Instead, Debtor appears to be seeking equitable relief from this Court.

Order - 6

In its Section 505 Motion, Debtor states, "it would be inequitable to the Debtor and the creditors of this estate to ruin Debtor's reorganization efforts for a tax debt that should be borne by 284 Sunrise . . . and responsible person Stephen J. Lark." [dkt item 96, at ¶ 14]

In making its determination, this Court is guided by the words of, and purpose and rationale underlying § 505(a). In enacting § 505, Congress sought to provide a means to quickly resolve disputed tax claims to avoid undue delay on the administration of the estate. *In re Stevens*, 210 B.R. 200 (Bankr. M.D. Fla.1997). The intended beneficiaries of that expedited process are the general unsecured creditors who may be harmed by a debtor's failure to pay or provide for the payment of a priority tax lien; the Debtor is not an intended beneficiary of § 505(a). *In re Galvano*, 116 B.R. 367 (Bankr. E.D.N.Y. 1990); *see also In re Williams*, 190 B.R. 225 (Bankr. W.D. Pa. 1995); *In re El Tropicano, Inc.*, 128 B.R. 153, 161 (Bankr. W.D. Tex. 1991). Further, § 505 does not provide a basis for this Court, under the guise of equitable relief, to excuse a tax debt lawfully owed by Debtor.

It is undisputed that Debtor failed to comply with New York State Tax Law § 1141(c). Debtor acknowledges that it acquired the assets of 284 Sunrise, and Debtor does not dispute that it was a bulk purchaser. Debtor also does not dispute that New York State's Claim Number 11 is premised on Debtor's obligation for the sales tax that 284 Sunrise failed to remit prior to Debtor acquiring its assets. Instead, Debtor argues that 284 Sunrise and Lark are also liable for the unremitted sales tax. This is unpersuasive in light of the purpose underlying § 1141(c), which is to prevent the transfer of assets of a corporate entity without a corresponding satisfaction of its tax obligations. In fact, Debtor's statement that its acquisition of 284 Sunrise "was strictly an asset purchase, and no liabilities were purchased" demonstrates that Debtor's acquisition of 284 Sunrise's

assets was precisely the type of transaction that § 1141(c) was enacted to avoid.

It is also undisputed that in objecting to New York State's filed Claim Number 11, Debtor bears the burden of overcoming the presumption of prima facie validity of that claim. FED. R. BANKR. P. 3001(f); *see Raleigh v. Illinois Dept. of Revenue, (In re Stoecker)*, 530 U.S. 15 (2000); 20 NYCRR 3000.15(d)(5); *Finserv Computer Corp. v. Tully*, 94 A.D.2d 197, 463 N.Y.S.2d 923 (3rd Dept. 1983), *aff'd* 61 N.Y.2d 947 (1984). By admitting that it participated in a bulk sale acquisition with 284 Sunrise while failing to provide New York State with timely notice of that sale as required under § 1141(c), Debtor has failed to rebut the presumption of prima facie validity of New York State's Claim Number 11.[5]

### Ruling

Based on the forgoing, it is hereby

**ORDERED**, that the Court has determined that Debtor has not met its burden of overcoming the presumption of validity of New York State's Claim Number 11; and it is further

**ORDERED**, that pursuant 11 U.S.C. § 505(a), the Court hereby determines that Debtor is liable for Claim Number 11, less amounts already remitted to New York State in partial satisfaction of that claim; and it is further

---

[5] Nothing in this decision alters or affects any rights that Debtor or New York State may have as against 284 Sunrise or Lark; this Court simply notes that New York State is entitled to only one satisfaction of its claim.

**ORDERED**, that within **sixty (60) days** from the date of entry of this Order, New York State shall file an amended proof of claim reflecting the unpaid balance owed by Debtor under Claim Number 11, which amended proof of claim shall be paid by Debtor in accordance with its confirmed Amended Plan of Reorganization [dkt item 70].

Dated: January 30, 2012
Central Islip, New York

Alan S. Trust
United States Bankruptcy Judge

Order - 9